Good morning, and may it please the court. My name is Myles Schreiner with the law firm Monteverde & Associates, and we represent the plaintiff, Jesse Campbell, in this action. Your Honors, we believe the district court erred in finding, as a matter of law, on a motion to dismiss, that both of the two distinct Rule 14A9 disclosure violations plaintiff alleged should be dismissed on materiality grounds. Now, the Supreme Court and TSC Industries set forth a very high bar for when the issue of materiality could be decided as a matter of law, and that's only when no reasonable investor could have possibly been misled by the statement. And we submit that conclusion could not and should not have been reached by the district court on a motion to dismiss. I'd like to start with the disclosure issue that the district court acknowledged could have been, quote, more clear, and that is the statement appearing directly above the table on page 60 of the proxy in the financial projection section, stating that it contained, quote, precipios, internal financial projections, when it in fact contained revenue projections attributable to both precipio and transgenomic on a combined or pro forma basis. Now, both the district court and the defendants point to certain statements in other distinct sections of the proxy that purportedly rendered the description appearing directly above that table not misleading as a matter of law. They first contend that because the revenue projections in the table were broken down into separate services and technology lines, that distinction made it so that no reasonable shareholder could have believed that the table contained solely precipio's premerger standalone revenue projections. And that is because according to defendants and the district court, certain statements in the proxy described transgenomic generally as a, quote, biotechnology company and precipio as a, quote, diagnostic services company. Now, the relevant question is really whether any reasonable transgenomic shareholder could have believed that the table was indicating that the premerger standalone precipio was projected to generate revenues from both a services and technology business segment of its own. And we believe the answer to that question is yes for a few reasons. Let me interrupt you. Sure. Tell me what you think your very best, closest case is. On this particular disclosure, Your Honor, we haven't seen one as blatant of a misdescription as this. This isn't an omission. This is just a misdescription. Now, wait. You say it isn't an omission. Don't you allege in your complaint it was negligently deleted? So we have two distinct disclosure claims. The omission-based one is the omission of the gap net income. Oh, you say the heading should be there. Well, the heading here- The heading should be there, but the PowerPoint information should be beneath it, right? That's paragraph six of your complaint. And so what we're alleging, the first disclosure claim, the one that this court conceded was perhaps more close in its opinion, was that the statement on page 60 of the proxy, so it's A128 of the record or the appendix, it says it's precipio's internal financial project. We allege that's a misstatement. Yeah, because it's combined country. Correct. But if the PowerPoint were inserted in there, it'd be okay, right? The PowerPoint from the- Yeah, you know what I'm referring to. Well, what it should have said was it should have said that these are pro forma projections, not precipio's projections. Precipio was defined- It's your case, but in paragraph six, you say they negligently allowed the projections from what I call the PowerPoint, you know what that is, A395 of the record, that they excised those, cut them out. Right. Because that would be the comparable information, and accounting terms by comparability, you'd put transgenomics, you'd put precipio's, and then you'd put the combined. Correct. And so what they excised from the PowerPoint was the net income projections. That's the second claim- Well, no, they also actually excised the revenues, cost of goods, sales, gross profit, SG&A, and R&D, and operating profit. Correct. But, I mean, we're focused now on the net income, the bottom line. And I don't want to conflate the two disclosure claims, though, because they are distinct in the complaint in my mind, but I'm happy to talk about the omissions-based one if that's what the court wants to- Well, I think they are tied together. Perhaps. I think that's the way you allege them. Yes, yes. They're related because they both relate to this table, but they're distinct in my mind because the misstatement here is that it's precipio's in terms of- You like that one better? That's the one the district court said could have been clearer, so I figured let's start with that one. You're talking about pre-merger precipio, post-merger precipio? That's exactly what the issue is, Your Honor. And precipio is defined throughout the proxy as pre-merger precipio. Post-merger precipio, the combined company, was defined as new precipio. Well, now, there's no definition, is there, of precipio itself? It's just new precipio that's defined. No, precipio was defined as the pre-merger entity. The LLC, and that's- Do they put quotes after it like you do on new precipio? Pretty hard to find. Sure. Tell us where he is in the record. So definitions appear at A57, A61- Okay, wait, wait, wait. Sure. Now, that doesn't help me for you to give me a whole list of those. You need to tell me. I thought it didn't define precipio, but it clearly defines new precipio. I get that. And that's A57. It's several places, but one of them, we can start with A57. Is precipio in parentheses and quotes on page 57? So what you'll see is- Honest question. It says, Precipio Diagnostics, LLC, or Precipio. Where is that? And that is the third line of the second paragraph, starting with- Yeah, but it's not in quotes, is it, or parentheses, like all the others? Get it? There it's not, but or precipio- Counsel, it's not anywhere in the whole dang deal if you word search it, is it? In quotations? Yeah, in quotations and defined like that. The next example I had was A61, but I don't know about the quotations. I don't think it's ever done. I did the word search, so it's fallible. Go ahead. Okay. But new precipio is defined- By the way, it is. I'm wrong. It is on my word search was bad on 61. So precipio is defined in quote marks on 61. Okay. It's just not at the first of it. Correct. That's new precipio. New precipio is defined in quotation marks throughout the proxy as the post-merger combined company. And so we believe that that description was inaccurate and misleading because it caused or could have caused a reasonable shareholder to believe that they were looking at revenue projections attributable to both or attributable solely from standalone pre-merger precipio. It's wrong. Now, how do you get to materiality? Well, that's a significant distinction. If a shareholder is thinking that these revenues are coming from solely pre-merger standalone precipio, you're adding that entire technology line of value, which is really coming from transgenomic. That's value that you as a shareholder already own. So it's really making precipio, the entity that you're merging with, look more valuable. And that's what we allege happened here, and that's what the deception is. And the PowerPoint makes it look pretty weak. I'm sorry, the PowerPoint makes it look pretty weak, W-E-A-K. I'm not sure what you're arguing. With precipio. The PowerPoint makes precipio look pretty weak. Correct. And the other disclosure issue that we allege, I actually want to get back to the services versus technology distinction. And we believe that both the district court and defendants simply plucked out one reference where precipio was described as a services company. But if you look at the broader context, the description of pre-merger precipio, there were statements in there that could have caused a reasonable shareholder to believe that it was in the process of generating a technology business segment commencing in 2017. And we cite those portions in our brief. Well, it was pre-merger precipio, you say, that had the added value that was confusing with post-merger precipio. Is that what I'm hearing you say? It's really a misdescription and a misrepresentation of where these revenues are coming from if you're thinking that precipio, i.e., pre-merger precipio, is generating these revenues for technology, which are actually coming from transgenomic. And so the misrepresentation is it's causing a shareholder to think that they're merging with a company that's more valuable than it actually is. Now, I'll move on to the second disclosure issue, which is the omission of the net income projections. And I'd like to give a brief background of how we got there. Prior to the shareholder vote, we had obtained the final banker's presentation from defendants' previous counsel. And when we looked through that presentation, we noticed that the net income projections had been excised from the proxy. They were nowhere to be found. And that struck us as odd because, obviously, they were easily disclosable. Obviously, they differed significantly from revenues. And we demanded that they disclose them. They refused. And that's why we're here today. And their arguments regarding why they don't think they had to disclose them are there's a few of them. Well, you agree that for one year they're right in the proxy. Is that 16? For net income? Yeah, for net income. No, I don't believe so. Oh, yeah, sure. They're in the financial statement. Goodness gracious. A216. Bigger in life. So I believe, and that's what caused the district court some confusion, too. I believe Your Honor is referring to that. Well, the district court thought it had every year on there, right? But that's referring to historical information. So looking backwards. Well, counsel, you've got 16 throughout yours with an E by it. So there's one year in all of your numbers that's accounted for with net income in this record. You're referring to A216? A216 for bigger in life. And so? Just look at it right there. Now, it fools you because it says net loss instead of net income. They mean the same thing, counsel. But these are going backwards. They're historical. So 2015, 2016. Yeah, but it has 16. And 16 is what you put an E by throughout here. Fair enough. And what you're griping about. So then for 17, 18, 19, and 20, nowhere to be found. Right. And apparently the district court thought they were there, right? Well, I think it was confused because I think it was conflating historical versus forward-looking information. But perhaps it was just suggesting that 16 was there. Okay, go ahead. But there's no dispute that 17, 18, 19, 20 were nowhere to be found. Is the term net income anywhere in this proxy statement? I don't believe so, and certainly not the projections, Your Honor. And is net loss in there anywhere? I don't know the answer to that, Your Honor. Okay. But the numbers, the actual projections, management projections. What are the closest numbers here to net income and net loss? All they've given here is revenues. Counsel, that's not true. They've got several places they do earnings before interest taxes and depreciation. And all that's based on the same accounting information that yields net income and net loss. And so they also contend that they gave cash flow. And the point there is that there's a body of case law that says that when the cash flow projections are prepared by a banker, which is really a hired gun who's paid a lot of money to find fairness, they're immaterial. The Delaware cases say that, and that's an important distinction. And the Delaware cases they rely on also emphasize the importance of management projections, and that's precisely because management is the one that's deemed to have the best view of the company's future prospects. So we also believe that was a material omission. And, again, I want to emphasize the entire claim really falls on materiality, and the district court recognized that, and we believe it really usurped the role of the trier of fact as set forth by the Supreme Court in TSC. It conceded that the table could have been described more clearly. We think at the very least this should have been allowed to proceed, discovery should have gone forward, and the trier of fact should have decided this, not the district court. And unless your honors have any further questions, I'll reserve the remainder of my time. That's reserved. Mr. DeVos. Good morning, your honors, and may it please the court. In this case, despite 250-plus pages of extensive disclosures by the companies describing the reasons for this merger and the processes behind it, plaintiff argues today that the company should have disclosed even more information. Plaintiff makes two basic arguments that the proxy as a whole is materially misleading. Both of them fail. First, despite courts consistently holding that companies don't need to disclose every tick and tack line item projection, plaintiff makes just that argument today, saying that Precipio's net income projections, a figure not used by the financial advisor in its analysis, was required to have been disclosed. Well, counsel, what about their best allegation, which is that there used to be, as most finance people and accounting people would expect, on page A128, there used to be the second down there, there used to be Precipio's internal projections of the same thing that's for transgenomic on the top lines. Get it? I understand it's an omissions claim that they proxy. That's omissions. And then as you put it out, the heading's wrong on the table. I disagree. Oh, counsel, that's not a close call. You define, quote, unquote, we found it finally. Precipio earlier is being the pre. I mean, you know, that's not a straight-faced argument. So now you need to tell us why it's not misleading. I'm happy to do that. So it's not misleading for a variety of reasons. I mean, first among them, let me just say it's not a misstatement. It's describing the sources of these projections throughout the proxy. Time and again, page 111 of the record, page 112 of the record, the proxy describes the analyses that the management team of these two companies, transgenomic and Precipio, prepared. And it describes how transgenomic prepared numbers for transgenomic and projected them out. And Precipio management created projected numbers for Precipio standing alone and for the combined pro forma company. That applies to every paragraph in this statement then, right? I think that proves nothing. I think referring to 111 proves nothing. Okay. So you've got to tell me why it's not misleading the way it is. Sure. It's not misleading the way it is, Your Honor. If you look at page 120 in the record, right there it says combined company, pro forma financials, and you look at the revenues broken out into two pieces for the combined company, services revenue, technology revenue, exactly the same as on page 128. There's combined revenue at the bottom, exactly the same as the total. Okay. So you say that technology is transgenomic and you say services is what's the other company? Precipio. Precipio. Thank you. Why then when you look at the top, look at the top of page 128. Sure. Notice it's got for transgenomics, you've got revenues, cost of goods sold, gross profit, all that stuff, and operating profit. Why don't any of those numbers look anything like the numbers that you say should apply to transgenomic under the technology part of page A120? Sure. Why don't those, the accounting term is articulate. Why don't they articulate? The reason, Your Honor, that the numbers are not the same is because the combined company's projections, that includes both these pieces after they had merged, those projections were developed by Precipio management. Transgenomic management developed its own projections. Those appear on page 128 in the record. Those projections are also used in the individual company analysis of transgenomics. So if you look earlier in the proxy when Craig Hallam analyzes the revenue and calculates revenue multiples for transgenomics standing alone, it's using these transgenomic standalone numbers. So again, Well, do you understand what I'm saying? Take a look at 128. Can you get 128? Yes. Look at the top. It has five items there for transgenomic. Yes. Now, when you come back over and you try to figure out where those are in A120, you can't. That's right, Your Honor. Tell me why not. They're not there. Because that's your best argument, and it doesn't articulate. So they're not there because the proxy makes clear that combined company projections were created by Precipio management. The numbers Your Honor is pointing to at the top of page 128 are prepared by transgenomic management. They were not used in this combined company analysis. What was used is what appears in the table. Well, they're a different set of numbers. That's right. And they just happen to have a few that happen to be the same. I don't believe I follow Your Honor's question. Well, you say the technology and services revenue are the same on the two pages, right? That's right. Yeah, right. But you say all the other numbers don't compare, right? That's what you just told me and what it looks like, too. I'm sorry, Your Honor. I may not follow your question. Okay. Take a look at the top of page 128. Yes. Start down any line there on transgenomic. I'm not on the part that he's griping about. I'm on the part above it. Right. No, I see that. And try to connect those over to the numbers on 120, and they don't work. They don't, and they shouldn't, and the proxy describes why that's the case. So this is page 112 of the proxy. Craig Hallam lays out the facts and figures it used in developing the analysis, and that includes the analysis on page 120. And they say very clearly they took projections for transgenomic standing alone, and that's what appears in 128. They take that from transgenomic management. They also take numbers for Precipio alone. That's there as the services revenue, and they take numbers for the combined company that's developed by Precipio. It's typical in these transactions that both sides prepare their own sets of projections. So you say A120 is from one company and 128 is from the other company? That's correct. So A120, that page, is developed entirely from Precipio's management team. The top table on page 128 is our projections developed by transgenomics management team, the other company. And, again, that's because both companies developed their own projections as they were analyzing and evaluating this deal. They shared them with one another. Craig Hallams, for its analysis, and as disclosed in the proxy, used the combined company financials prepared by Precipio management. Transgenomics management did not prepare combined company materials. It's not described as having done so, and that's why there aren't numbers in the proxy for the combined company prepared. These statements just fail any test of comparability, right? If Your Honor could clarify what you mean by these statements. Okay, I mean looking like they fit together. Okay, look at the top of A128. It says transgenomic internal financial projections, and you've just told me what those are. Precipio's internal financial projections, and they don't look a thing like the other, and they have the same heading leading into it, and you said the page before they were going to be comparable. I don't believe that. Comparable means comparable. They look alike. They don't look alike at all, do they? They don't. They don't. Thank you. Okay. I mean the reason they don't, Your Honor, is they were prepared by different companies' management. It's not surprising that the two management teams came up with different numbers for either the combined company or each of them going forward. Different management teams would come up with different projections. Who prepared the PowerPoint slide? The PowerPoint slide is a summary presentation to the board prepared by Craig Hallam. As described in the proxy, the numbers, the numbers. If I understand the PowerPoint source, it says it is Precipio. It says source, Perl Management, Precipio Management. It says that right in the PowerPoint? Yes, it does. Okay. So Precipio's internal financial projections are the PowerPoint, right?  So one slide of the PowerPoint contains projections created by Precipio. A395. Flipping there right now, Your Honor. But yes, that's correct. Why shouldn't that appear right there? So backing up, the securities laws require disclosure. I'm counsel. Why shouldn't it appear right there? Why shouldn't the table? Yeah. Yeah. So to answer Your Honor's question, not every fact and figure that the board sees or considers is required by the securities laws to appear in a proxy statement. This proxy is already 250 pages. If every statement that the board looked at at all had to be included, twice that length, who knows how long. This is my double-sided version right here, and it's already too much. I have one, too. Right. Yeah, and it's word searchable and all kinds of things. Is it misleading? Is A128 misleading? No, Your Honor, it is not. Was it negligently done that way? You know what Paragraph 6 says. Yes. Did you negligently take out, cut out, from that table, the stuff that's on A395? No. Now, wait. Hold on. That's a denial. They allege it's true. For this proceeding, we have to assume it's true. Your Honor, you have to. Look at Paragraph 6 if you do the complaint, and it says you negligently cut these out. I take Your Honor's point. We do not in our briefing contest the negligence piece, the statement of mind part of that statement. Okay. It's typical that that is an allegation you can make. But what Plaintiff has to make out to make his claim is he has to allege not just a negligent omission, a negligent omission that renders materially misleading some other statement in the proxy. The only statement that Plaintiff points to, and this is in Paragraph 34 of his amended complaint, are the revenue numbers. He says revenue is made materially misleading because you didn't disclose net income. The reason that doesn't work is because as he concedes in his briefing, any reader of the proxy, and especially the reasonable investor, the standard the court has to follow, would understand that revenue is not net income. The expenses are the difference between the two. If you say what your revenue is. Well, there's a lot of things. A lot of things. Yeah, yeah. There's a lot, a lot of things, but go ahead. So, I mean, that's exactly it. Revenue is not misleading because you're not saying income. You know that there is a difference between the two, and that difference means that you're not misled as to that number. An example, and this is an example from the cases of how revenue might be misleading, is if I said we had $200 million in revenue, but omitted the fact that $100 million of that was fraudulent related party transactions. That would be an omission that undercuts the statement made. You agree a 23% amount, I think that's what they claim it is, would be material. So, this goes to. Counsel, I'd always address the question. Yes. 23% amount. We said 2% wasn't, right? There's a case that says 2% wasn't. Yes, there is. But 23% is surely material. You're right, Your Honor. We do not make an argument that, we do not make a materiality argument as to the revenue projections numbers. We make a materiality argument as to the net income projections. They aren't a material statement. Courts throughout, federal courts and throughout the courts in Delaware, following the TSC. We go by the Supreme Court in the Eighth Circuit. Right, right. You both were so in love with Delaware, it kind of offended us. Go ahead. So, it comes from the Supreme Court. The Supreme Court laid out the standard in TSC industries, and they said there must be a significant likelihood that the omission would significantly alter the total mix of information provided to shareholders. That contains almost every element that's important to the court's analysis here. We're talking about the total mix. We're talking about everything. You can't read a page alone in isolation. You have to look at every statement disclosed. That's part of the standard the Supreme Court laid out. It also means that statements missing need to significantly alter it. It's not just, could it be useful? Is the information cumulative? Is there a substantial change with this number in compared to what was disclosed? And even beyond that, misleading is an element of the claim, not just materiality. I see the yellow lights on for me. I wanted to speak briefly about our loss causation argument here. We mentioned at the end of our brief the plaintiff, all his allegations point towards what was the proper value of Prescipio. An important thing to consider, the only economic harm in this case there could be, the only economic part of this case, is the ratio at which transgenomic shareholder shares and Prescipio shareholder shares were exchanged. That number was set independently from the analysis conducted by Craig Hallam, independently of all the numbers we've talked about today. So even if plaintiff makes out an allegation that Prescipio's analysis conducted by Craig Hallam undervalued it, that doesn't go to the point of whether or not the exchange ratio was fair. Put it a different way. If I sold your car for $12,000, whether or not I had earlier told you it was worth $5,000 or $6,000, it doesn't matter because you got a good deal. Whether or not Prescipio is valued correctly or improperly doesn't directly connect to whether the exchange ratio, the only thing with any economic value in this case, was right. So nothing could ever be misleading in this proxy statement? I think your argument proves too much. I'm not trying to say that nothing could ever be misleading. What I'm trying to say is plaintiff needs to make some allegation beyond a conclusory I was harmed to connect the misleading statement he said is made and the economic effects of this case. He can't make out a claim simply by saying there could have been more information. He has to say that also harmed me in some economic way. The economic event in this case was the exchange of those shares. I encourage the court to go look at the allegations in the complaint on this point. Which paragraph? That's what I was looking for. Sure. I apologize. I don't have it top of mind. I believe paragraphs 41 and 42... Thank you. ...point to that most clearly. If the court has no further questions, I see my red light is on. Seeing no questions, thank you for the argument. Rebuttal, Mr. Schreiner? The text of Rule 14A9 prohibits statements which are false or misleading with respect to any material fact. Misleading is defined as giving the wrong idea or impression. It's synonymous with confusing, ambiguous, deceiving. If you look at A128, the statement, Precipio's internal financial projections is a misleading statement precisely because those are not Precipio's internal financial projections. Certainly not something that a district court should have decided as a matter of law on a motion to dismiss, Your Honors. That's the crux of our case right there. And we think this case should go forward for that reason. I'm happy to answer any other questions. Do you agree that your loss causation is in paragraphs 41 and 42? Yes, and those surrounding paragraphs. And the gist is, and again, Dura and the district courts in this circuit have all said it's a Rule 8 notice pleading standard for loss causation. We allege that transgenomic was undervalued because the merger didn't account for certain business developments, major contracts in Canada and Europe. And we allege that Precipio was overvalued. I see my time is up. You can finish your sentence for sure. And we allege that Precipio was overvalued, which in turn would mean that transgenomic shareholders didn't maintain enough equity in the post-merger combined company. Thank you for the arguments. Thank you. Case number 18-2198 is submitted for decision.